**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION**

JOSHUA CRUZ-MCKINNON,   CASE NO.: _____

          Plaintiff,   **JURY TRIAL DEMANDED**

  v.

BIG TIME RESTAURANT
GROUP CORP.,

          Defendant.

_____/

**COMPLAINT**

Plaintiff, JOSHUA CRUZ-MCKINNON ("**Plaintiff**" or "**Mr. Cruz-McKinnon**"), through his counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant BIG TIME RESTAURANT GROUP CORP., ("**RESTAURANT GROUP** and/or **DEFENDANT RESTAURANT GROUP**"), alleges as follows:

**NATURE OF CASE**

1. Plaintiff complains pursuant to the Americans with Disabilities Act ("**ADA**") and the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("**FCRA**"); and seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to disability-based discrimination.

2. Furthermore, this Action is to redress the Defendant unlawful employment practices against Plaintiff, including Defendant unlawful discrimination against Plaintiff for denying his reasonable accommodation request to administer insulin for his diabetes and for

1

permitting Plaintiff to be subjected to an unwelcome hostile work environment predicated on his disability.

## PARTIES

3. Plaintiff is an individual and resident of Miami-Dade County, Florida, and a former employee of Defendant.

4. Defendant BIG TIME RESTAURANT is a Florida for-profit corporation with its principal place of business at 400 Clematis Street, Suite 205, West Palm Beach, Florida 33401.

5. Defendant BIG TIME RESTAURANT employed no fewer than 15 or more persons at all relevant times and is therefore an employer as defined by the FCRA.

6. At all relevant times, Plaintiff was employed by Defendant and performed work for Defendant at its location in Broward County, Florida.

## JURISDICTION AND VENUE

7. This Action seeks damages based on the violations of the Americans with Disabilities Act "Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 *et seq.*, as amended ("**FCRA**").

8. This Court has jurisdiction over Plaintiff's claims arising under federal law pursuant to 28 U.S. Code § 1331.

9. This Court has supplemental jurisdiction over Plaintiff's claims arising under the FCRA pursuant to 28 U.S. Code § 1367 because Plaintiff's FCRA claims are related to Plaintiff's ADA claims and therefore form part of the same case or controversy.

10. Defendant BIG TIME RESTAURANT operated LOOIE BOSSI's restaurant in this judicial circuit and a substantial part of the events or omissions giving rise to this Action, including the unlawful employment practices alleged herein, occurred within this judicial circuit.

## PROCEDURAL REQUIREMENTS

11. Plaintiff has complied with all statutory prerequisites to file this Action.

12. On or about September 24, 2020, Plaintiff dual filed his charge with the Equal Employment Opportunity Commission ("**EEOC**") and the Florida commission on Human Relations ("**FCHR**"), Charge number 510-2019-06619.[1]

13. On or about August 25, 2020, Plaintiff requested a right to sue letter from the EEOC.

14. This Action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendant, and the FCHR has neither conciliated nor issued a determination of whether there is reasonable cause.

## FACTUAL ALLEGATIONS

15. Mr. Cruz-McKinnon is an individual diabetic man. At all relevant times, Plaintiff was a Type 1 Diabetic. As a result of his diabetes, Plaintiff was and is required to self-administer five (5) shots of insulin throughout each day.

16. Defendant BIG TIME RESTAURANT operates LOOIE BOSSI, an Italian restaurant in Fort Lauderdale.

17. In or around February 2019, Plaintiff began working for Defendant as a Line Cook at LOOIE BOSSI's restaurant.

18. At all relevant times, Plaintiff was the only diabetic line cook working at Defendant's LOOIE BOSSI restaurant. Plaintiff is required to administer his insulin by way of injection five (5) times a day.

---

[1] An EEOC filing automatically operates as a dual FCHR filing. *See Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 893 (Fla. 2002) (Holding, "[U]nder the workshare agreement between the EEOC and FCHR, by which each agency designates the other as its agent for purposes of receiving, investigating, and filing charges, [Plaintiff's] filing with the EEOC *automatically operated* as a dual-filing with the FCHR.") (emphasis added).

3

19. Kevin Darr ("**DARR**") is an individual male, and at all relevant times was employed by Defendant at their LOOIE BOSSI restaurant in Fort Lauderdale as its Executive Chef. Darr held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.

20. Cory ("**CORY**") is an individual male, and at all relevant times was employed by Defendant as a manager at Defendant LOOIE BOSSI's restaurant in Fort Lauderdale. Cory held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.

21. Patrick ("**PATRICK**") is an individual male, and at all relevant times was employed by Defendant as a manager at Defendant LOOIE BOSSI's restaurant in Fort Lauderdale. Patrick held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.

22. Throughout the course of Mr. Cruz-McKinnon's employment, Defendant discriminated against Plaintiff on the basis of his disability by failing to accommodate Plaintiff's reasonable accommodation to administer his insulin in the privacy of a restroom, and for subjecting Plaintiff to a hostile work environment predicated on his disability.

23. During the interview process, Plaintiff notified Defendant that he was a diabetic and that he would need to administer insulin shots (in a safe manner) during his work shifts.

24. Plaintiff requested a reasonable accommodation to administer his insulin in a LOUIE BOSSI restaurant, which Plaintiff preferred to do in a restroom for safety, privacy and comfort. However, notwithstanding Plaintiff's doctor-mandated time-intervals to administer his insulin, Defendant prohibited Plaintiff from using the restroom without first obtaining the approval of a supervisor on each occasion.

25. While Defendant's request to seek a supervisor's approval may seem reasonable, Defendant's managers would often deny Plaintiff's request to use the restroom to accommodate his disability. Instead, Defendant LOOIE BOSSI's managers required Plaintiff to administer his insulin in the open—in front of co-workers and customers, and without the privacy and safety Plaintiff requested to use the restroom for.

26. Further, Defendant's supervisors and managers created and subjected Plaintiff to a hostile work environment predicated on Plaintiff's disability.

27. Defendant's supervisors incessantly humiliated Plaintiff's need to administer insulin shots to manage his diabetes by likening Plaintiff to a drug addict. Indeed, Plaintiff's managers referred to Plaintiff as a "**crackhead**" because of his need to self-administer insulin.

28. For instance, Plaintiff's own manager, Darr, would regularly ask Plaintiff if he "**needed any crack**." On multiple occasions, Darr would tell Plaintiff, "**I have some crack in my pocket if you need it**," or "**if you need that crack, I got you**." Similarly, Defendant LOOIE BOSSI's manager Cory would tell Plaintiff, "**I got *that* right here**," implying Cory was offering Plaintiff drugs. Astonishingly, a third LOOIE BOSSI manager, Patrick, told Plaintiff, "**I smoke crack and sleep with prostitutes—if you do too, let me know.**"

29. Plaintiff opposed and notified Defendant concerning the unwanted comments and hostility from his co-workers.

30. In or around April 2019, Plaintiff reported his managers unwanted conduct and to Defendant's H.R. Director. However, to Plaintiff's disbelief, Defendant's H.R. Director told Plaintiff his managers were "**just teasing**" him, advising Plaintiff, "**Don't take it personal**." Further, Defendant's H.R. Director told Plaintiff his complaints were brought "**too late**" for her to

5

do anything.  Accordingly, Defendant dismissed Plaintiff's discrimination complaints, and failed to conduct an investigation of any kind.

31. In or around April 2019, Plaintiff's mother fell gravely ill and Plaintiff requested to schedules with another employee, Defendant said no but informed Plaintiff that he should take the time and "**Do what you gotta do**."

32. Plaintiff took two days off and was terminated for "**No call, No show**," despite being directed to take the time to care for his ill mother.

33. Plaintiff contacted Defendant's HR once again, Plaintiff was instructed to call and work it out with his supervisor, who had been discriminatory throughout Plaintiff's employment.

34. As a result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities within the company, and continues to suffer same. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

35. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendant.

36. The above are merely examples of some of the discrimination and retaliation Defendant subjected Plaintiff to.

**COUNT ONE**
*Disability Discrimination*
*(Hostile Work Environment)*
*in Violation of Florida Statute Section §760.10(1)(a)*

37. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs contained herein.

38. The FCRA provides, in relevant part, that "[i]t is an unlawful employment practice for an employer … to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." § 760.10(1)(a) Fla. Stat. (2020).

39. Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment by subjecting Plaintiff to work in a hostile work environment predicated on his disability. Defendant's supervisors created a hostile work environment by incessantly referring to Plaintiff as a drug addict, a "crackhead," and offering Plaintiff illegal drugs, simply because Plaintiff is a diabetic.

40. On numerous occasions, Defendant did not allow Plaintiff to use the restroom to administer his insulin.

41. Therefore, Defendant violated the FCRA. *See* § 760.10(1)(a) Fla. Stat. (2020).

42. As a result of Defendant's intentional discriminatory conduct and its termination of Plaintiff's employment in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

43. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA. Accordingly, Plaintiff also requests punitive damages as authorized by the FCRA.

44. Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

45. The conduct of Defendant and/or its agents deprived Plaintiff of his statutory rights guaranteed under federal law.

46. Plaintiff has been damaged by Defendant's illegal conduct.

**COUNT TWO**
*Disability Discrimination*
*(Hostile Work Environment)*
*in Violation of 42 U.S. Code § 12111*

47. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs contained herein.

48. The ADA prohibits employment discrimination on the basis of an individual's disability.

49. Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment by subjecting Plaintiff to work in a hostile work environment predicated on his disability. Defendant's supervisors created a hostile work environment by incessantly referring to Plaintiff as a drug addict, a "crackhead," and offering Plaintiff illegal drugs, simply because Plaintiff is a diabetic.

50. On numerous occasions, Defendant did not allow Plaintiff to use the restroom to administer his insulin.

51. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights. Accordingly, Plaintiff also requests punitive damages.

52. Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT THREE**
*Disability Discrimination*
*(Failure to Accommodate)*
*in Violation of 42 U.S. Code § 12111*

53. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs contained herein.

54. The ADA prohibits employers from denying an individual's reasonable accommodations for a disability,

55. Defendant discriminated against Plaintiff on the basis of his disability by denying his accommodation request to administer insulin the privacy and safety of a bathroom at the medically necessary precise times. However, Defendant required Plaintiff to first seek the approval of a supervisor before using the bathroom to administer his insulin. Hence, Defendant required Plaintiff to seek approval of the supervisors who created a hostile work environment and referred to Plaintiff as a "crackhead" precisely because of his need to administer insulin. Further, Defendant's supervisors would deny Plaintiff's request

56. Defendant would suffer no burden by granting Plaintiff's reasonable accommodation request to administer his insulin shots in the bathroom. Defendant's requirement that Plaintiff first obtain the permission of a supervisor to administer his insulin shots was enforced as an opportunity for Defendant's supervisors to facilitate and subject Plaintiff to a hostile work environment.

57. As a result of Defendant's intentional discriminatory conduct and its termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible

damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

58. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights. Accordingly, Plaintiff also requests punitive damages.

59. Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

60. The conduct of Defendant and/or its agents deprived Plaintiff of his statutory rights guaranteed under federal law.

61. Plaintiff has been damaged by Defendant's illegal conduct.

## COUNT THREE
### *Retaliation*
### *in Violation of 42 U.S. Code § 12111*

62. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs contained herein.

63. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

64. Plaintiff put Defendant on notice of his disability and the need to administer insulin five times a day during his interview for hire with Defendant.

65. Defendant's made numerous attempts to make Plaintiff uncomfortable failed to accommodate Plaintiff's accommodation requests.

66. Defendant's terminated Plaintiff's employment.

67.     Plaintiff made numerous complaints to Defendant's Human Resources Office about the discriminatory practices and comments as a result of his disability.

68.     Defendant violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff, Joshua Cruz-McKinnon demands judgment against Defendant collectively, BIG TIME  RESTAURANT GROUP, CORP and pray for the following relief: (1) an award of compensatory damages in an amount consistent with FCRA and ADA; (2) an award of reasonable attorneys' fees and costs of this action in accordance with FCRA and ADA; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of FCRA and ADA; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## JURY DEMAND

Pursuant to the Florida Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all triable issues raised by this complaint.

Dated: February 1, 2021          **DEREK SMITH LAW GROUP, PLLC**
                                 701 Brickell Ave, Suite 1310
                                 Miami, FL 33131
                                 Tel: (305) 946-1884
                                 Fax: (305) 503-6741

                                 s/Tiffani-Ruth I. Brooks
                                 Tiffani-Ruth I. Brooks, Esq.
                                 Fla. Bar No. 1010664
                                 Tiffani@dereksmithlaw.com
                                 *Counsel for Plaintiff*